UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THIRD PARTY ADVANTAGE ADMINISTRATORS, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:06-CV-0534-G |
| J.P. FARLEY CORPORATION, ET AL., | ) ) | **ECF** |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the plaintiffs, Third Party Advantage

Administrators, Inc. ("TPAA") and S. Wayne Adamik ("Adamik"), to remand this

case to the state court from which it was removed.  For the reasons stated herein, the

motion is denied.

## I.  <u>BACKGROUND</u>

TPAA is a corporation in the business of contracting with outside companies to

administer third-party employee benefits programs, health-care management services,

and claims processing.  Plaintiff's Original Petition ("Petition") ¶ 7, *attached to* Notice

of Removal *at* Tab C.  The principal office of TPAA is located in Dallas County,

Texas, and its state of incorporation is Texas.  *Id.* ¶ 2.  The principal owner of TPAA is an individual, Adamik, who resides in Collins County, Texas.  *Id.* ¶¶ 3, 7.  At the times relevant to this petition, one of  TPAA's largest clients was the Dr. Pepper/7Up Bottling Group ("Dr. Pepper").  *Id.* ¶ 7.  However, TPAA was not the sole provider of employee benefits programs for Dr. Pepper.  *Id.*

The defendant, First Health Group Corporation ("First Health"), a Delaware corporation with its principal place of business in Illinois, *id.* ¶ 4, administered certain employee benefits programs for Dr. Pepper during the same relevant time period.  *Id.* ¶ 7.  According to the plaintiffs, First Health did not possess the technological resources necessary to process the claims from Dr. Pepper in an efficient manner.  *Id.* ¶ 8.  In an effort to assure that Dr. Pepper was fully satisfied with *all* of its employee benefits services, TPAA and First Health entered into an agreement, which was never reduced to writing.  *Id.* ¶ 10.  At its most basic level, the agreement provided that TPAA would provide funds to First Health for the purposes of upgrading First Health's technology as needed to service Dr. Pepper.  *Id.*  In exchange for these funds, First Health would remit to TPAA $1.50 per employee per month ("PEPM") enrolled in the Dr. Pepper employee benefits program.  *Id.*  The agreement commenced in September of 2002 and continued without controversy until October of 2004.  *Id.* ¶¶ 12, 18.  TPAA estimates that it "received from First Health an amount of money ranging from somewhere between $7,000 and $8,000 each month".  *Id.* ¶ 12.

- 2 -

In October of 2003, TPAA and the defendant, J.P. Farley Corporation

("Farley"), an Ohio corporation with its principal place of business in Ohio, *id.* ¶ 5,

entered into an asset purchase agreement. *Id.* ¶ 14. According the plaintiffs, the

terms of the agreement involved a sale of certain assets to Fraley, including TPAA's

contract to provide services to Dr. Pepper. *Id.* In exchange for this asset, Farley was

to administer the Dr. Pepper account but pay a sum to Adamik each month on a

PEPM basis. *Id.* The petition asserts that at no time did TPAA or Adamik assign to

Farley the plaintiffs' rights to receive the $1.50 PEPM from First Health. *Id.*

However, Farley was to collect the $1.50 PEPM from First Health and remit those

funds to Adamik on a monthly basis. *Id.*

The petition states that from October of 2003 through April of 2005, First

Health continually submitted to Farley the $1.50 PEPM. *See id.* ¶¶ 17-18. The

plaintiffs allege that First Health discontinued making payments following the April

2005 payment to Farley. *Id.* ¶ 17. In addition, the plaintiffs aver that Farley, on its

own, reimbursed to First Health the Dr. Pepper PEPM's for the months of October

2004 through April 2005, an amount totaling $51, 000. *Id.*

The plaintiffs filed this case in the 116th Judicial District Court of Dallas

County, Texas on February 22, 2006. Notice of Removal at 1. With regards to

Farley, the plaintiffs allege claims of breach of contract, *see id.* ¶¶ 22-24, conversion,

*see id.* ¶¶ 25-28, tortious interference with a business relationship, *see id.* ¶ 29, and

violation of the Texas Theft Liability Act, *see id.* ¶ 32.  As to First Health, the

plaintiffs assert claims of breach of contract, *see* Petition ¶¶ 19-21, conspiracy to

commit both conversion and tortious interference, *see id.* ¶ 30, and, in the alternative,

the plaintiffs bring a claim for quantum meruit alleging that First Health received an

unjust enrichment through TPAA's funding of First Health's technology upgrade, *id.*

¶ 31.  The defendants removed this action on March 24, 2006 alleging diversity of

citizenship jurisdiction.  *See* Notice of Removal at 2.  The instant motion to remand

was filed on March 30, 2006.  *See* Motion to Remand.

## II. ANALYSIS

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a

State Court of which the district courts of the United States have original

jurisdiction."  Under this statute, "[a] defendant may remove a state court action to

federal court only if the action could have originally been filed in the federal court."

*Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d

1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted).

Removal jurisdiction must be strictly construed, however, because it "implicates

important federalism concerns."  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th

Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir.

1988).  Furthermore, "any doubts concerning removal must be resolved against

removal and in favor of remanding the case back to state court."  *Cross v. Bankers*

*Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); see also

*Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*,

292 U.S. 263, 270 (1934).  The burden of establishing federal jurisdiction is on the

party seeking removal.  *Frank*, 128 F. 3d at 921-22; *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise removal

jurisdiction:  (1) the existence of a federal question and (2) complete diversity of

citizenship among the parties.  *See* 28 U.S.C. §§ 1331, 1332.  The court can properly

exercise jurisdiction on the basis of diversity of citizenship if the parties are of

completely diverse citizenship and the case involves an amount in controversy of at

least $75,000.  *See* 28 U.S.C. §1332(a).[1]  The defendants asserted only diversity

jurisdiction in its notice of removal.  Because the plaintiffs concede that they are

diverse in citizenship from both defendants, the only issue in this matter is whether

the minimum amount in controversy requirement has been satisfied.

A.  Amount in Controversy

To establish jurisdiction when the plaintiffs' state court petition does not allege

a specific amount of damages, as in the instant case, the removing defendants must

prove, by a preponderance of the evidence, that the amount in controversy exceeds

$75,000.  See *Allen v. R & H Oil & Gas Company*, 63 F.3d 1326, 1335 (5th Cir.

---

[1]     Section 1332 states, "The district courts shall have original jurisdiction
of all civil actions where the matter in controversy exceeds the sum or value of
$75,000, exclusive of interest and costs, and is between--(1) citizens of different
States . . . ."  28 U.S.C. § 1332(a)(1).

1995) (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).  A court may

determine that removal is proper if it is facially apparent from the state court petition

that the claims are likely above $75,000.  See *id*.  If the amount in controversy is not

apparent from the face of the petition, the court may rely on facts asserted in the

removal notice or in an affidavit submitted by the removing defendants to support a

finding of the requisite amount.  See *id*.  While post-removal affidavits may be

considered in determining the amount in controversy at the time of removal, such

affidavits may be considered only if the basis for jurisdiction is ambiguous at the time

of removal.  *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing

*Asociacion Nacional de Pescadores a Pequena Escala O Artesanales de Colombia (ANPAC) v.*

*Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510

U.S. 1041 (1994), *abrogated on other grounds, Marathon Oil Co. v. A.G. Ruhrgas*, 145

F.3d 211 (5th Cir. 1998)).  However, if it is facially apparent from the petition that

the amount in controversy meets the statutory requirements for diversity jurisdiction,

such post-removal affidavits do not deprive the district court of jurisdiction.  *Id*.

The plaintiffs' breach of contract claim alone is sufficient to establish the

jurisdictional minimum amount in controversy as against First Health.  The petition

alleges that First Health breached its agreement with the plaintiffs by failing to make

payments under the Dr. Pepper PEPM agreement for the period of April 2005.

Petition ¶ 19.  Thus, at the time of filing, the plaintiffs alleged nine months of non-

payment.  By the plaintiffs' own calculations, each payment should have been
between $7,000 and $8,000, *id.* ¶ 12, making the total amount in question for this
period of time to be between $63,000 and $72,000.  The plaintiffs go on to note that
in addition to the nine months of non-payment, they similarly did not receive
payments for the period of October 2004 through April 2005 and that the payments
owed for this period totaled $51,000.[2]  *Id.* ¶ 19.  While it is unclear on the face of the
petition whether the plaintiffs allege this $51,000 to be included in its breach of
contract claim against First Health, the plaintiffs unambiguously assert that First
Health is liable for the $51,000 under the conspiracy to commit conversion, *id.* ¶ 30;
see *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000) (noting that defendants who
commit a civil conspiracy are held jointly and severally liable for the actions of the
conspiracy).  Thus, on the face of the petition, it is apparent that the plaintiffs allege
against First Health an amount in controversy between $114,000 and $127,000, an
amount in excess of this court's minimum jurisdictional threshold.

 The plaintiffs' tortious interference with a business relationship claim against
Farley is sufficient by itself to establish the jurisdictional amount in controversy

---

[2]     During the period from October 2004 through April 2005, the $51,000
in question, when divided evenly across the seven months, equates to an average
monthly payment of approximately $7,285.71.  The court takes notice that this
average is consistent with the plaintiffs' estimation that payments from First Health
to the plaintiffs amounted to between $7,000 and $8,000 per month.

against this second defendant.[3]  The plaintiffs allege in their petition that "[h]ad it

not been for Farley's willful and intentional interference, Adamik would have

continued to receive the [Dr. Pepper PEPM] Payments, and the $51,000 that Farley

gave to First Health would have instead been sent to Adamik."  Petition ¶ 29.  Again,

by the plaintiffs' own estimations, First Health's unpaid Dr. Pepper PEPM payments

amount to between $63,000 and $72,000, thus making the total amount in

controversy as against the defendant Farley between $114,000 and $127,000 as well.

See *In re Performance Nutrition, Inc.*, 239 B.R. 93, 114 (Bankr. N.D. Tex. 1999);

*Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex. Civ. App.--El Paso 1977, writ ref'd

n.r.e.) (stating that in a claim for tortious interference in relation to a breach of

contract, the damages for the tortious interference are equal to the damages for the

underlying breach of contract).

## III.  CONCLUSION

Because the amount sought by the plaintiffs as against each defendant exceeds

the $75,000 jurisdictional minimum, this court has subject matter jurisdiction over

this case and the removal from state court was proper.  For the above stated reasons,

the plaintiffs' motion to remand is **DENIED**.

---

[3]     Because the amount in controversy as asserted against each defendant is
sufficient on the face of the petition to meet the jurisdictional minimum amount in
controversy, the court makes no determinations regarding the applicability of
supplemental jurisdiction in this case.

**SO ORDERED**.

September 26, 2006.

_A. Joe Fish_

A. JOE FISH
CHIEF JUDGE