UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THIRD PARTY ADVANTAGE          )
ADMINISTRATORS, INC., ET AL.,   )
                                )
            Plaintiffs,         )          CIVIL ACTION NO.
                                )
VS.                             )          3:06-CV-0534-G
                                )
J.P. FARLEY CORPORATION, ET AL., )         **ECF**
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

Before the court is a motion by the defendant J.P. Farley Corporation

("Farley") to compel arbitration of this dispute and to stay discovery pending

arbitration.  For the reasons set forth herein, the motion to compel is granted and the

motion to stay is denied.

## I.  BACKGROUND

Third Party Advantage Administrators, Inc. ("TPAA") is a corporation in the

business of contracting with outside companies to administer third-party employee

benefits programs, health-care management services, and claims processing.

Plaintiff's Original Petition ("Petition") ¶ 7, *attached to* Notice of Removal *at* Tab C.

The principal owner of TPAA is an individual, S. Wayne Adamik ("Adamik"). *Id.*
¶¶ 3, 7. At all times relevant to this petition, one of TPAA's largest clients was the
Dr. Pepper/7Up Bottling Group ("Dr. Pepper"). *Id.* ¶ 7. TPAA was not, however, the
sole provider of employee benefits programs for Dr. Pepper. *Id.*

The defendant First Health Group Corporation ("First Health") administered
certain employee benefits programs for Dr. Pepper during the same time period. *Id.*
¶ 7. According to the plaintiffs, First Health did not possess the technological
resources necessary to process the claims from Dr. Pepper in an efficient manner. *Id.*
¶ 8. In an effort to assure that Dr. Pepper was fully satisfied with *all* of its employee
benefits services, TPAA and First Health entered into an agreement, which was never
reduced to writing. *Id.* ¶¶ 10, 12. Under the agreement, TPAA would provide funds
to First Health for the purposes of upgrading First Health's technology as needed to
service Dr. Pepper; in exchange for these funds, First Health would remit to TPAA
$1.50 per employee per month ("PEPM") enrolled in the Dr. Pepper employee
benefits program. *Id.* ¶ 10. The agreement commenced in September of 2002 and
continued without controversy until October of 2004. *Id.* ¶¶ 12, 18.

Important to the instant motion is the manner through which the plaintiffs
collected the $1.50 PEPM from First Health. First Health would submit invoices
from its administration of the Dr. Pepper account to TPAA; TPAA would bill Dr.
Pepper for both TPAA's administration services and First Health's administration

services.  *Id.* ¶ 13.  Dr. Pepper, in turn, would pay TPAA, and TPAA would remit to First Health the amount listed on the First Health invoices minus the $1.50 PEPM. *Id.*  This process is known as "paying net."  *Id.*

In October of 2003, TPAA and Farley entered into an asset purchase agreement.  *Id.* ¶ 14.  According to the plaintiffs, the terms of the agreement involved the sale of certain accounts to Farley, including TPAA's contract to provide services to Dr. Pepper.  *Id.*  In exchange for these assets, Farley was to administer the employee benefits plans for the acquired accounts and pay an "administrative fee" to Adamik each month on a PEPM basis.  *Id.*  The petition asserts that at no time did TPAA or Adamik assign to Farley the plaintiffs' rights to receive the $1.50 PEPM from First Health.  *Id.*  According to the petition, Farley was to collect the $1.50 PEPM from First Health in the same manner as previously done (by paying net) and remit on a monthly basis the $1.50 PEPM, along with the administrative fees, to Adamik.  *Id.*

The petition avers that from October of 2003 through April of 2005, First Health and Farley operated under this agreement.  See *id*. ¶¶ 17-18.  The plaintiffs allege that this method of collection was discontinued following the April 2005 payment.  *Id.* ¶ 17.  In addition, the plaintiffs assert that Farley, on its own initiative, reimbursed First Health the $1.50 PEPM for the months of October 2004 through April 2005.  *Id.* ¶ 18.

This motion to compel arbitration is based on a dispute resolution provision in the asset purchase agreement.  *See* Defendant J.P. Farley Corporation's Brief in Support of Its Motion to Compel Arbitration and to Stay Discovery ("Motion to Compel") at 2.  That provision reads as follows:

> Section 10.8  <u>Dispute Resolution.</u>  Any controversy, claim or dispute between the parties arising out of or relating to this Agreement or any related agreement or any breach hereof or thereof shall be referred to resolution by the Seller's and the Buyer's senior executives who have authority to reach agreement on any matters in dispute upon written request by either party specifying in reasonable detail the nature of the dispute. In the event that such Seller's and Buyer's senior executives are unable to resolve the dispute within thirty (30) days after the initial request for dispute resolution, the dispute shall be settled by final and binding arbitration before a sole arbitrator in the headquarters city of the non-initiating party pursuant to the then-current Commercial Rules of the American Arbitration Association and the federal substantive and procedural law of arbitration.  Judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  The arbitrator will not have the power to award punitive or exemplary damages excluded by, or in excess of, any damage limitations expressed in this Agreement or any Ancillary Document. Each party will bears its own attorney's fees and costs related to the arbitration.  Unless otherwise determined by the arbitrator, the costs and expenses of the arbitration shall be borne equally by the parties.

Asset Purchase Agreement ("APA") at 13, *attached to* Motion to Compel *as* Exhibit A-1.

The manner of calculating the administrative fees was set forth in Exhibit F of the asset purchase agreement. *See* APA at 2. The administrative fees were to be determined on a per employee per month basis. *See* Administrative Fees Payment Parameters ("Exhibit F") at 1-2, *attached to* APA *as* Exhibit F. Under the agreement, Farley was entitled to keep up to $12.00 per employee per month for each of the accounts it purchased from the plaintiffs and was to remit the remaining PEPM income to the plaintiffs.[1] *Id.* at 1. The asset purchase agreement called for adjustments of the amount to be retained by Farley (and accordingly the amount to be remitted to the plaintiffs) on two future dates. See *id.* In addition to specifying how the administrative fees are to be determined, Exhibit F contains a dispute resolution provision, which reads as follows:

> (G)(iv) <u>Dispute Resolution.</u> In the event Adamik disputes Buyer's determination of the adjustments to Buyer's Portion and Adamik's Portion, or any other determination with respect to any amounts that Adamik is entitled to receive pursuant to this Exhibit F, then the parties hereto

---

[1]     Exhibit F contains the following useful illustration:

> [I]f the gross revenues per employee life per month derived in whole or in part from a particular Account is Twenty Dollars and 00/100 ($20.00), [Farley]'s Portion per employee life per month . . . would be Twelve Dollars and 00/100 ($12.00), and Adamik's Portion per employee life per month would be Eight Dollars and 00/100 ($8.00).

Exhibit F at 1.

shall attempt to agree upon the recommendation of an independent qualified expert who will determine whether or not the adjustments to Buyer's Portion and Adamik's Portion are made in accordance with the terms of this Agreement.  Buyer and Adamik shall share equally the expenses involved in retaining such qualified independent expert, and the opinion of the qualified independent expert shall be binding with respect to such determination.  In the event Buyer and Adamik cannot agree upon the selection of the independent qualified expert within 10 days after the date Adamik notifies Buyer that he disputes Buyer's determination of the Allowable Expenses and the adjustments to Buyer's Portion and Adamik's Portion, then the issue shall be resolved pursuant to Section 10.8 of this Agreement as though Seller's and Buyer's senior executives were unable to resolve a dispute under this Paragraph G(iv) within the 30 days specified in Section 10.8 of this Agreement; except that for the purposes of resolving a dispute under this Paragraph G(iv) only, (A) there shall be no discovery except for three (3) sixty (60)-minute depositions allowed for each side; (B) each party may elect to have only one expert witness, who shall deliver their written opinion to the other side no later than seven (7) days before the scheduled hearing date; (C) the hearing will be conducted not more than fourteen (14) calendar days after the initial demand for arbitration; (D) the arbitrator shall deliver his or her decision within seven (7) days after the hearing, and the arbitrator's decision shall be binding on the issue; and (E) the arbitration shall take place in Chicago, Illinois.

*Id.* at 6.  Farley maintains that subsequent contract negotiations between Farley, Adamik, First Health and the Dr. Pepper Bottling Company of Texas eliminated Adamik's right to receive the $1.50 PEPM from First Health.  Motion to Compel at 2.

The plaintiffs filed this case in the 116th Judicial District Court of Dallas County, Texas on February 22, 2006.  Notice of Removal at 1.  With regard to Farley, the plaintiffs allege claims of breach of contract, see *id.* ¶¶ 22-24, conversion, see *id.* ¶¶ 25-28, tortious interference with a business relationship, see *id.* ¶ 29, and violation of the Texas Theft Liability Act, see *id.* ¶ 32.  As to First Health, the plaintiffs assert claims of breach of contract, *see* Petition ¶¶ 19-21, conspiracy to commit both conversion and tortious interference, see *id.* ¶ 30, and, in the alternative, the plaintiffs bring a claim for *quantum meruit* alleging that First Health received an unjust enrichment through TPAA's funding of First Health's technology upgrade, *id.* ¶ 31.  The defendants removed this action on March 24, 2006, properly alleging jurisdiction based on diversity of citizenship.  *See* Notice of Removal at 2; Memorandum Order and Opinion, September 26, 2006.

On March 31, 2006, First Health filed its answer and a third party complaint, naming Dr. Pepper Bottling Company of Texas and American Bottling Holdings, Inc. (collectively, "the third party defendants") as defendants.  *See* Docket Sheet.  First Health's Third Party complaint seeks a declaratory judgment regarding the third party defendants' duty to defend and to indemnify First Health against the plaintiffs' claims in this case.  Defendant First Health Group Corporation's Original Answer and Third Party Complaint ("Third Party Complaint") ¶¶ 14-16.  Also, First Health seeks damages from the third party defendants on a breach of contract theory.  See *id.*

¶¶ 17-20.  No arbitration agreement exists between the third party defendants and First Health.  On July 6, 2006, Farley sent a letter to the plaintiffs demanding arbitration under the provisions of Exhibit F, *see* Letter from Bruce L. Dean (July 6, 2006), *attached to* Motion to Compel *as* Exhibit D; the plaintiffs responded to the letter by denying that Exhibit F's dispute resolution procedure was applicable to their claims, *see* Letter from Anthony J. Barbieri (July 7, 2006), *attached to* Motion to Compel *as* Exhibit E.

The instant motion to compel arbitration and to stay discovery followed. Currently, there is pending before the court a motion by the third party defendants to dismiss the claims against them for failure to state a claim upon which relief can be granted; briefing on the motion to dismiss is set to close on November 28, 2006.

## II.  ANALYSIS

Farley seeks to compel arbitration under the expedited dispute resolution procedures delineated in Exhibit F of the asset purchase agreement, or in the alternative, under section 10.8 of the asset purchase agreement.  The plaintiffs argue that neither the expedited arbitration procedures of Exhibit F nor the broader dispute resolution provision of section 10.8 is applicable to their claims.

### A.  Applicable Law

In considering whether a dispute is subject to binding arbitration, the first step a court must take "is to determine whether the parties agreed to arbitrate that

dispute." *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  In general, this determination is made by "applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act." *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983)) (internal citations omitted).  Here, the court sees no reason not to apply federal law in its analysis of whether this case is subject to arbitration.  Neither party has argued that the Federal Arbitration Act ("FAA") does not apply to this dispute, and the case appears to come within the FAA's purview.[2]  *See* 9 U.S.C. § 1 *et seq.*  However, the FAA is not an independent source of federal jurisdiction and the party seeking relief under the FAA must demonstrate the existence of federal question or diversity jurisdiction.  *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001).  In this case, because the parties are of completely diverse citizenship and the amount in controversy exceeds $75,000, this court has jurisdiction.  *See* 28 U.S.C. §1332(a).

Federal law strongly favors arbitration.  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (the FAA "declared a national policy favoring arbitration.") (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 10 (1984)); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should

---

[2]     Additionally, the terms of section 10.8 call for application of "the federal substantive and procedural law of arbitration."  APA at 13.

be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  Consequently, the FAA, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-prong inquiry. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).  The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *Id.* at 445.  Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Id*.  Under the second prong, the court must ensure that no legal restraints external to the agreement have foreclosed arbitration. *Id*. at 446.  If the court finds that this two-prong inquiry is satisfied, arbitration is mandatory. *Mitsubishi Motors*, 473 U.S. at 628.

In their response to the motion to compel arbitration, the plaintiffs do not argue that the arbitration clauses of the asset purchase agreement are invalid.  Rather,

they argue that the claims raised in their petition fall outside the scope of either

arbitration clause.

B.  <u>Scope of Arbitration Clauses</u>

The court will begin by examining the broader of the two arbitration clauses --

section 10.8 of the asset purchase agreement.  By its terms, section 10.8 governs

"[a]ny controversy, claim or dispute between the parties arising out of or relating to

[the asset purchase agreement] or any related agreement."  APA at 13.  The plaintiffs

contend that because the agreement with First Health regarding the $1.50 PEPM had

nothing to do with the asset purchase agreement, it does not arise out of or relate to

the asset purchase agreement.  *See* Plaintiffs' Response to Defendant J.P. Farley

Corporation's Motion to Compel Arbitration and Stay Discovery & Brief in Support

Thereof ("Plaintiffs' Response") at 3.

The court notes, in beginning the analysis, that "when the scope of an

arbitration agreement is reasonably in doubt, it should be construed in favor of

arbitration."  *Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 724-

25 (E.D. Tex. 2001) (citing *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d

633, 635 (5th Cir. 1985)), *aff'd*, 33 Fed. Appx. 705 (5th Cir.), *cert. denied*, 537 U.S.

880 (2002).  Typically, language within the arbitration clause stating that the clause

governs all disputes "related to" the agreement are interpreted as broad provisions

covering almost all disputes arising between the parties to the contract.  See *Pennzoil*

*Exploration and Production Company v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract").  Though no reference is made to the $1.50 PEPM in the asset purchase agreement, the plaintiffs' claims necessarily relate to that agreement -- the plaintiffs allege that Farley is not remitting the proper amount of money to the plaintiffs in accordance with the asset purchase agreement.  In their petition, the plaintiffs assert, essentially, that the transfer of the $1.50 PEPM payment by Farley to the plaintiffs stemmed from the asset purchase agreement.  "Farley Corp would continue to administer the accounts that it purchased from TPAA, and Farley Corp actually collected the payments therefor.  Then, pursuant to the APA, Farley Corp would pay to Adamik each month on a PEPM basis.  *As a result of this arrangement* between Farley and TPAA, Farley collected the $1.50 PEPM from First Health each month . . . and sent those funds to Adamik on a monthly basis."  Petition ¶¶ 14-15.  By the plaintiffs' own admission, the agreement by which Farley sent the $1.50 PEPM to the plaintiffs was related to the asset purchase agreement.[3]

---

[3]  While the agreement between *First Health* and the plaintiffs is not a "related agreement" because it predates the asset purchase agreement, the manner of payment by First Health to the plaintiffs -- by "paying net" through Farley -- indicates that there must be some related agreement between Farley and the plaintiffs that governs distribution of the funds.  Such a related agreement would not exist but for the asset purchase agreement.

The plaintiffs argue further that even if the breach of contract claim is arbitrable, the other claims -- the tortious interference claim, the violations of the Texas Theft Liability Act claim, and the conspiracy claim -- are "wholly separate from the contract" claims and thus should be maintained separately.  *See* Plaintiffs' Response at 9.  The plaintiffs argue that under Texas state law, "[i]f the alleged tort claims are wholly separate from the contract and could be maintained in absence of the contract, they are independent claims."  Plaintiffs' Response at 9 (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243 (5th Cir. 1998)).  The court assumes *arguendo* the accuracy of this proposition, but it is irrelevant to the instant motion because the arbitration clause is not governed by Texas law.[4]  While the asset purchase agreement contains a general choice of law provision designating Texas state law as the governing body of law, the arbitration clause contains its own choice of law provision.  *See* APA at 13.  "[T]he dispute shall be settled by final and binding arbitration . . . pursuant to the then-current Commercial Rules of the American Arbitration Association and the federal substantive and procedural law of arbitration."  *Id.*  Thus, the question is not whether Texas law will allow for the arbitration of the contract claims and the non-contract claims, but whether federal arbitration law allows for the joining of such claims.  Under federal law, a claim

_____

[4]        Furthermore, as discussed *infra*, the non-contract claims in this case could not be maintained in the absence of the contract.  The contract provided the vehicle through which the other alleged violations were made possible.

sounding in tort does not prevent arbitration, so long as the underlying contract embraces the disputed matter. *Norcom Electronics Corporation v. CIM USA Inc.*, 104 F. Supp. 2d 198, 203-05 (S.D.N.Y. 2000); *Carib Aviation and Marine Consultants, Ltd. v. Mitsubishi Aircraft International, Inc.*, 640 F. Supp. 582, 588 (S.D. Fla. 1986); *Legg, Mason & Co., Inc. v. Mackall & Coe, Inc.*, 351 F. Supp. 1367, 1370-71 (D.D.C. 1972).

It can fairly be said that the plaintiffs' tort claims are "embraced" by the underlying contract. But for the contractual relationship between Farley and the plaintiffs, Farley could not have committed the alleged torts and violation of the Texas Theft Liability Act. The asset purchase agreement served as the conduit through which these alleged acts were made possible; that is, it is the existence of the asset purchase agreement that gave rise to the possible assertion of the claims alleged. Because the tort disputes necessarily arise from the contractual relationship established by the asset purchase agreement, the arbitration clause found at section 10.8 of that agreement is applicable to all of the plaintiffs' claims against Farley.

Farley further argues that not only does section 10.8 of the asset purchase agreement apply to the underlying claims against it, but also that the expedited arbitration clause enumerated in Exhibit F applies. By its terms, the arbitration clause found in Exhibit F covers only disputes regarding Farley's "determination of the adjustments to [Farley]'s Portion and Adamik's Portion, or any other determination with respect to any amounts that Adamik is entitled to receive *pursuant*

*to this Exhibit F.*"  Exhibit F at 6 (emphasis added).  Exhibit F governs only the

payment of administrative fees.  See *id.* at 1.  Thus, the question is whether the $1.50

PEPM owed by First Health to the plaintiffs constitutes an administrative fee.  This

leads the court to a basic question of contract interpretation.

According to Farley, because the only payments remitted to the plaintiffs by

Farley are in the form of administrative fees and because the plaintiffs challenge the

amount of the money being remitted, the plaintiffs' causes of action must relate to

the administrative fees.  Defendant J.P. Farley Corporation's Reply Brief in Support

of Motion to Compel Arbitration and to Stay Discovery ("Defendant's Reply") at 7-

8.  The plaintiffs, on the other hand, contend that the $1.50 PEPM derived from the

agreement between themselves and First Health does not qualify as an

"administrative fee" under the terms of the contract.  Plaintiffs' Response at 11.

When a contract is unambiguous, the court is to give the terms in the contract

their plain meaning, and the terms will be enforced as written.  *Reliant Energy Services,*

*Inc. v. Enron Canada Corporation*, 349 F.3d 816, 822 (5th Cir. 2003).  The main body

of the asset purchase agreement defines administrative fees as "all gross revenues

derived in whole or in part from the *Accounts* . . . based on the parameters set forth on

Exhibit F".  APA at 2 (emphasis added).  "Accounts" are "[t]he accounts described in

schedule 1.1(a)" of the asset purchase agreement.  *Id.* at 1.  Schedule 1.1(a) lists nine

accounts, including "Dr. Pepper/7Up Bottling Company;" nowhere in schedule 1.1(a)

is there any mention of the payments being made by First Health to the plaintiffs.

The $1.50 PEPM is not derived "in whole or in part" from the Dr. Pepper account;

rather, it is derived from an independent agreement between TPAA and First Health.

That First Health uses those funds to perform services for Dr. Pepper is irrelevant.

Therefore, the court finds that the $1.50 PEPM, though transferred to the plaintiffs

simultaneously with the administrative fees, does not itself constitute an

administrative fee.

Accordingly, all of the plaintiffs' claims against Farley fall within the scope of

arbitrable claims under section 10.8 of the asset purchase agreement.

## C.  Possible Foreclosure of Arbitration

As the second prong of this two-prong inquiry, the court must determine

whether there are any legal restraints external to the arbitration agreement that would

foreclose the possibility of arbitration.  *OPE International LP*, 258 F.3d at 446.  The

burden of demonstrating that such restraints exist is on the party seeking to avoid the

arbitration agreement.  *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir.

2002).  A claim is subject to arbitration unless Congress clearly intended to preclude

the parties from waiving their judicial remedies.  *Gilmer v. Interstate/Johnson Lane*

*Corporation*, 500 U.S. 20, 29 (1991); see also *AT&T Technologies, Inc. v.*

*Communications Workers of America*, 475 U.S. 643, 650 (1986).

The plaintiffs offer only one argument in an effort to discharge their burden --
that the interests of judicial economy require the claims against both Farley and First
Health to be resolved in the same forum. *See* Plaintiffs' Response at 12. However,
the plaintiffs point to no statute or case law in support of this proposition. Thus,
they fail to meet the exacting standard to trump their previous agreement to resolve
this dispute through arbitration.

Moreover, the judicial economy argument is without merit because both the
plaintiffs and First Health have consented to arbitrate the claims against First Health.
Parties to a dispute who have not previously agreed to settle their claims through
arbitration can voluntarily agree to submit their dispute to arbitration after the
dispute arises. See *General Motors Corporation v. Pamela Equities Corporation*, 146 F.3d
242, 246 (5th Cir. 1998). The plaintiffs state that they "respectfully pray that this
court deny [the motion to compel] or, in the alternative, that this Court require all
parties in this suit join in arbitration of all pending claims under the terms of Section
10.[8] of the APA (and not Exhibit F of the APA)."[5] Plaintiffs' Response at 13. First
Health asserted, "Every party to this action consents to have Plaintiffs' claims against
First Health compelled to arbitration along with Plaintiffs' claims against [Farley]."

---

[5] The plaintiffs's alternative prayer asked for the court to order arbitration
under the terms of "Section 10.3" of the asset purchase agreement. Plaintiffs'
Response at 13. Section 10.3 does not pertain to arbitration; it is a provision for
giving notice under the terms of the agreement. Based on the context of the
statement, the court assumes this to be a typographical error.

Defendant First Health Group Corp.'s Response to Defendant J.P. Farley

Corporation's Motion to Compel Arbitration and Stay Discovery and Supporting

Brief ("First Health's Response") at 3.  Thus, based on the stipulated post-dispute

agreement to arbitrate the claims against First Health in conjunction with the claims

against Farley under the provisions of section 10.8 of the asset purchase agreement,

the court grants the parties' request to compel arbitration of the claims against First

Health.

C. <u>Stay Pending Arbitration</u>

Farley requests the court to stay discovery during the arbitration of the claims

against Farley.  *See* Motion to Compel at 1.  Farley asserts in it brief in support of the

motion to compel that it seeks a stay of discovery "as opposed to a stay of the

litigation, to allow the Court to rule on a . . . Rule 12(b)(6) motion that Third-Party

Defendants Dr. Pepper Bottling Co. of Texas and American Bottling Holdings, Inc."

have pending before this court.  Motion to Compel at 1 n. 1.  Section 3 of the FAA

provides that a court shall "on application of one of the parties stay the trial of the

action until such arbitration has been had in accordance with the terms of the

agreement . . . ."  9 U.S.C. § 3.  The Fifth Circuit has held, however, that dismissal of

a case -- rather than a stay -- is proper in some instances.  See *Alford v. Dean Witter

Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly

supports dismissal of the case when *all* of the issues raised in the district court must

- 18 -

be submitted to arbitration.") (emphasis in original); *Fedmet Corporation v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (upholding dismissal on arbitration grounds even though the plaintiff would have no remedy because the statute of limitations had run).   Under this standard, the court grants the motion to compel arbitration of the claims against both Farley and First Health and, in lieu of staying discovery for the remaining litigation, the court dismisses the plaintiffs' claims against both defendants without prejudice to the arbitration of those claims.

### D.  Remaining Third Party Complaint

In its original answer to the plaintiffs' complaint, First Health asserted a third party complaint against Dr. Pepper Bottling Company of Texas and American Bottling Holdings, Inc.  Upon dismissal of the claims by the plaintiffs against Farley and First Health, the third party complaint for declaratory judgment and breach of contract are the only causes of action that remain.  No arbitration provision exists between the third party defendants and First Health, and the third party defendants have not entered into a post-dispute agreement to arbitrate.[6]  Thus, the court cannot force the arbitration of the claims raised in the third party complaint.  See, *e.g.*, *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582 (1960) ("arbitration is a matter of contract and a party cannot be required to submit

---

[6]       However, First Health has indicated a willingness to arbitrate its third party complaint.  *See* First Health's Response at 2.  "First Health asks that the Court compel Plaintiffs' claims against it, as well as First Health's Third-Party claims [,] to arbitration."  *Id.*

to arbitration any dispute which he has not agreed so to submit."); *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344, 346 (5th Cir. 1997) (FAA does not require arbitration "for parties who have not contractually bound themselves to arbitrate their disputes.").

Federal jurisdiction exists over an entire action, including claims over which the court does not have original jurisdiction, when the claims conferring federal jurisdiction and the claims for which the court lacks jurisdiction "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). A district court may decline to exercise supplemental jurisdiction when the court has dismissed all of the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction over claims for which the court does not have original jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350. When all that remains in a case is a third party claim based only on supplemental jurisdiction and where few resources of the

parties or the court have been expended in prosecuting the third party complaint, it is wholly appropriate for the court to decline to exercise supplemental jurisdiction over such pendent claims.  See *Exxon Corporation v. Presidio Energy, Inc.*, No. 92-2231, 1993 WL 329986, *1 (E.D. La. Aug. 20, 1993).

When the claims conferring federal subject matter jurisdiction are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claims and send them to state court.  See *Carnegie-Mellon*, 484 U.S. at 350 n.7.  According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petroleum Company v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

First Health asserts that jurisdiction over its third party complaint was proper under 28 U.S.C. § 1367, asserting that the third party claims are "derivative of, and arise out of the same transactions and occurrences forming the basis of Plaintiff's claims in this matter."  Third Party Complaint at 6.  In light of the dismissal of all of the plaintiffs' claims against the original defendants, the court must examine whether jurisdiction should be exercised over these remaining third party claims.  After weighing the relevant factors, the court declines to exercise jurisdiction over these

claims.  The third party complaint is a state law dispute between three parties, all of whom share common citizenship in at least one state -- Delaware.  In the absence of any related federal claims, the dispute between First Health and the third party defendants should more properly be resolved by the state courts.  See *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law").

## III.  CONCLUSION

For the reasons stated above, Farley's motion to compel arbitration of the plaintiffs' claims against it is **GRANTED**.  The motion to compel arbitration, as extended by consent of the parties to the plaintiffs' claims against First Health, is also **GRANTED**.

Within thirty days of the date of this memorandum opinion and order, counsel for Farley and First Health shall serve upon the plaintiffs, the court, and the American Arbitration Association a demand for the arbitration of the plaintiffs' claims.  Within thirty days of serving that demand for arbitration, counsel for Farley and First Health shall notify the court, in writing, of the schedule for the arbitration proceeding.  Upon the filing of these materials, the plaintiffs' claims against Farley and First Health will be dismissed without prejudice to assertion of those claims before the arbitral tribunal.

The court declines to exercise supplemental jurisdiction over First Health's remaining state law claims against the third party defendants.  Accordingly, First Health's complaint against the third party defendants is **DISMISSED** without prejudice.

**SO ORDERED**.

November 27, 2006.

_____

A. JOE FISH
CHIEF JUDGE